# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GRAPHIC COMMUNICATIONS UNION, LOCAL 17-M, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:18-cv-00011-TWP-DML |
| OUR SUNDAY VISITOR, INC., | ) ) ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

This matter is before the Court on Defendant Our Sunday Visitor, Inc.'s ("OSV") Motion to Transfer Venue filed pursuant to 28 U.S.C. §§ 1404, 1406 ([Filing No. 11](Filing No. 11)). Plaintiff Graphic Communications Union, Local 17-M (the "Union") initiated this action, asserting a claim to enforce an arbitration award for breach of contract arising out of an employment dispute between OSV and a Union member. One month after the case was filed, OSV filed its Motion to Transfer Venue, asking that this action be transferred to the Northern District of Indiana, Fort Wayne Division. For the following reasons, the Court **grants** the Motion to Transfer Venue.

## I. BACKGROUND

OSV is an Indiana non-profit corporation with its principal place of business located in Huntington, Indiana. OSV has no other locations, branches, or offices in Indiana. OSV is engaged in commerce by selling newspapers as well as other materials and products. The Union is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The Union's main office is located in Indianapolis, Indiana. The Union is the exclusive collective bargaining representative for all production and maintenance employees of OSV.

The Union and OSV are parties to a collective bargaining agreement covering OSV's production and maintenance employees in various job classifications at the Huntington facility. The collective bargaining agreement contains a contractual grievance and arbitration procedure, which culminates in a final resolution of grievances through binding arbitration.

On December 10, 2015, OSV terminated the employment of Jennifer Pohler ("Pohler") for violating attendance policies. Pohler is a bargaining unit employee. On December 15, 2015, the Union filed a contractual grievance protesting the discharge of Pohler who was employed at OSV's Huntington facility. Before the grievance reached arbitration, on January 22, 2016, the parties agreed to settle the grievance whereby Pohler would be reinstated on January 25, 2016, without back-pay from the date of discharge to the date of reinstatement. However, OSV backed out of the agreement and the grievance proceeded to arbitration.

On December 9, 2016, an initial arbitration hearing was held in Indianapolis to resolve a procedural dispute regarding the timeliness of the Union's demand for arbitration and whether the grievance was arbitrable. The grievance was permitted to proceed to arbitration, so a hearing on the merits of the grievance was held on June 2, 2017, in Fort Wayne, Indiana. The arbitration opinion and award was issued on September 21, 2017, wherein the arbitrator ruled in the Union's favor on the merits and held that the parties had reached a binding agreement to reinstate Pohler on January 25, 2016, without back-pay from the date of discharge to the date of reinstatement.

The arbitration decision, however, did not specify whether Pohler was entitled to back-pay from January 25, 2016 through the date of her actual reinstatement following the arbitration decision. Because of this lack of clarity, on September 28, 2017, the Union asked the arbitrator to clarify this aspect of the decision. The arbitrator responded, explaining that his decision did not

intend to prolong the denial of back-pay to the date of his decision, but rather, it should coincide with the date the parties agreed upon for Pohler's reinstatement.

After the arbitration decision was issued, OSV reinstated Pohler but would not pay her any back-pay from January 25, 2016 through the date of her actual reinstatement. As a result, the Union filed this lawsuit on January 3, 2018, seeking to enforce the arbitration award and to obtain an order directing OSV to pay back-pay from January 25, 2016, through the date of Pohler's actual reinstatement ([Filing No. 1](Filing No. 1)).

## II. LEGAL STANDARD

"Congress enacted the federal change of venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010). In contrast, "[u]nder 28 U.S.C. § 1406(a), a district court may transfer a case *brought in the wrong division or district* if it is in the interest of justice to do so." *Hapaniewski v. Chicago Heights*, 883 F.2d 576, 579 (7th Cir. 1989) (citation and quotation marks omitted) (emphasis added).[1]

A party may seek change of venue pursuant to 28 U.S.C. § 1404(a), which states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

District courts have substantial deference when deciding Section 1404(a) motions to transfer venue. *Research Automation*, 626 F.3d at 976–77. "Section 1404(a) is intended to place

---

[1] While OSV asserts its Motion is brought pursuant to Sections 1404 and 1406, the Motion focuses on Section 1404, and furthermore, Section 1406 does not provide a basis to transfer this case because the case properly can be filed in this venue under 29 U.S.C. § 185. Therefore, the Court considers OSV's Motion under 28 U.S.C. § 1404 rather than under 1406.

discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness." *Id.* at 977 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (internal punctuation omitted). "The statute permits a flexible and individualized analysis and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations." *Id.* at 978 (citation and quotation marks omitted).

Concerning the principle of convenience, courts generally consider the availability of and access to witnesses as well as the parties' access to and distance from resources in each forum. Courts also generally consider the location of the material events and the relative ease of access to sources of proof. *Id.*

Concerning the principle of the "interest of justice," courts consider the efficient administration of the court system by looking at docket congestion, likely speed to trial in each court, each court's familiarity with the relevant law, the desirability of resolving controversies in each locale, and the relationship of each community to the controversy. *Id.* "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Id.*

### III. DISCUSSION

OSV asserts that transferring this action to the Northern District of Indiana, Fort Wayne Division, is appropriate because OSV maintains its business in the Northern District, Pohler resides in the Northern District, the contract at issue in this case was negotiated in and covers work performed in the Northern District, the anticipated witnesses and evidentiary documents are located in the Northern District, and the dispute involves an arbitration which took place in the Northern District. OSV argues that these facts all support transferring the action to the Northern District when considering the factors for a Section 1404(a) transfer. *See Schwarz v. Nat'l Van*

4

*Lines, Inc.*, 317 F. Supp. 2d 829, 835 (N.D. Ill. 2004) (courts consider the location of the material events, the relative ease of access to sources of proof, the convenience of the parties, and the convenience of the witnesses).

Additionally, OSV argues that, when determining the proper venue in a breach of contract case, courts consider "where the conduct underlying the breach occurred and where performance under the contract was to take place." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 877 (N.D. Ill. 2015). In this case, both of these factors point to Huntington, Indiana, which is in the Northern District. OSV asserts that the Labor Management Relations Act contains a venue provision, stating, "district courts shall be deemed to have jurisdiction of a labor organization . . . in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." 29 U.S.C. § 185(c). The Union is engaged in representing or acting for its employee members in the Northern District.

OSV acknowledges that a plaintiff's choice of venue is to be accorded deference, but "where the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim . . . the deference traditionally given to the selection is lessened . . . [and] the plaintiff's choice of forum becomes only one of the many factors the court considers." *Rendon v. Wexford Health Servs.*, 2010 U.S. Dist. LEXIS 130991, at *10 (N.D. Ill. Dec. 10, 2010) (citations and quotation marks omitted). OSV asserts that the only connection this case has to the Southern District of Indiana is that the Union maintains it office in Indianapolis. However, none of the operative facts occurred in the Southern District, and all of the Union's members who work for OSV reside and work in the Northern District. Pohler, who is the center of this action works and lives in the Northern District, and the arbitration hearing was held in the Northern District.

The Union responds that transferring this case to the Northern District of Indiana would be inappropriate because the Northern District is not a "clearly more convenient" forum in which to litigate this matter, and the interests of justice weigh against transferring this matter as transferring the case to the Northern District would merely shift the burden of litigating in another district from OSV to the Union, which is an inappropriate use of Section 1404(a). As the plaintiff in this matter, the Union asserts that the Southern District is its chosen forum: its principal office is in Indianapolis, it represents employees in the Southern District, and OSV conducts business in the Southern District. The Union has only one full-time employee, and she reports to work at the Union's office in Indianapolis. The Union has approximately four hundred twenty members who work for about twenty-five different employers throughout the Southern and Northern Districts of Indiana as well as Illinois. Almost half of its members live in the Southern District of Indiana while the rest of its members live in the Northern District of Indiana and Illinois. The Union points out that, while OSV focuses on the arbitration hearing that occurred in Fort Wayne, there also was an initial arbitration hearing in Indianapolis. The Union asserts that it is a small labor organization with limited resources, so transferring this matter to Fort Wayne would create a hardship for the Union in the form of travel and lodging expenses and fees for private mediation.[2]

The Union argues that in the interest of justice, a discretionary transfer to the Northern District is not warranted. It argues that only one factor—the location of the material events—weighs in favor of transfer. Although the contract was breached in the Northern District, the location of the breach has little bearing on the convenience of litigating the case because there will be no need for a "site visit." While the sources of proof (employment documents, etc.) are located

---

[2] The Union alleges that "the Northern District of Indiana typically utilizes privately conducted mediation rather than court-conducted settlement conferences . . . . The expense of private mediation will present a hardship for the Union compared to a court-conducted settlement conference." (Filing No. 15 at 11 n.2.)

6

in Huntington, technology has made it easy to share documents via email, so this factor is neutral. The Union asserts that Indianapolis and Fort Wayne are close to each other, and if it was not inconvenient for OSV to participate in an arbitration hearing in Indianapolis, then it should not be inconvenient to litigate this case in Indianapolis.

Regarding the interests of justice, the Union notes that this case arises under federal law, so the Northern and Southern Districts of Indiana do not have a particular expertise that the other district does not have. The Union asserts that OSV has not claimed Fort Wayne has a unique relationship to or interest in this litigation. It also asserts that, as of December 2017, the median time from filing to disposition in civil cases in the Southern District of Indiana is eight months while the median time in the Northern District of Indiana is thirteen months;[3] thus, the docket congestion factor weighs against transfer. The Union concludes that the Northern District of Indiana is not clearly a more convenient forum and the interests of justice do not favor transfer.

OSV replies that the Southern District of Indiana has been in a state of judicial emergency for some time now with a weighted caseload of almost nine hundred fifteen cases per judge, ranking first in the Seventh Circuit and second in the nation in caseload. *See* Filing No. 20-1 at 3. Judicial vacancies further bog down the Court's docket. OSV points out that district court judges from other states such as Wisconsin and Illinois have been "loaned" to the Southern District to help with the overwhelming caseload. *Id.*

OSV concludes,

> In an effort to help alleviate the logjam and to avoid the potential of an out of state judge presiding over this case, it would be most appropriate to transfer venue to the Northern District of Indiana where the underling events surrounding this matter occurred, and where the majority of the exhibits and witnesses including potential nonparties are located.

---

[3] *See* http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2017/12/31 (last visited July 11, 2018).

([Filing No. 20 at 7](#)).

The Court has considered the deference generally accorded to a plaintiff's choice of venue but also recognizes that this District has a weak connection with the operative facts giving rise to the claim. Although the Union is relatively small and has its principal office in Indianapolis where its one full-time employee works, the Union has a presence in the Northern District of Indiana as well as in Illinois. While the Union points to its many members and contractual employers located in the Southern District to try to strengthen its connection to this District, the Court notes that none of those members or employers are relevant to this case. The only employer and Union members relevant to this case are located in the Northern District.

The witnesses, with the exception of the Union's one full-time employee, are located in the Northern District. Documents and other evidence are located in the Northern District, although with the ease of information sharing this factor does not tip the scales in either direction. Importantly, however, non-party discovery will be particularly challenging if venue remains in the Southern District, while such discovery will be unimpeded in the Northern District.

Also important in the Court's consideration is the fact that all the material events surrounding the claim in this case occurred in the Northern District. These facts are thoroughly explained above in the background section and in the discussion of the parties' arguments and do not bear repeating here.

While some cases in this District may have a slightly shorter time from filing to disposition than in the Northern District, the Court notes the well-known judicial emergency under which the Southern District of Indiana has been operating for quite some time. This District has one of the heaviest caseloads in the country, and as OSV pointed out, district court judges from other states have been loaned to the Southern District to help with the overwhelming caseload. In fact, a senior

8

judge from the Northern District of Indiana has been sitting by designation in the Southern District in 2018 to help with the heavy caseload ([Filing No. 20-1 at 3](Filing No. 20-1 at 3)).

While some of the factors regarding transfer are neutral, the majority of the factors weigh in favor of transferring the case to the Northern District, with only the plaintiff's choice of venue and the Union's office location in Indianapolis favoring denial of the Motion to Transfer. Because most of the factors favor transferring the case to the Northern District and in light of this District's judicial emergency, the Court determines that transferring this action to the Northern District is warranted.

## IV. CONCLUSION

For the reasons stated above, OSV's Motion to Transfer Venue ([Filing No. 11](Filing No. 11)) is **GRANTED**, and this case shall be **transferred** to the Northern District of Indiana, Fort Wayne Division. The Clerk is directed to transfer this matter to the Northern District of Indiana, Fort Wayne Division.

**SO ORDERED.**

Date: 8/10/2018

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David T. Vlink
FILLENWARTH DENNERLINE GROTH & TOWE LLP
dvlink@fdgtlaborlaw.com

William R. Groth
FILLENWARTH DENNERLINE GROTH & TOWE LLP
wgroth@fdgtlaborlaw.com

Shane C. Mulholland
BURT, BLEE, DIXON, SUTTON & BLOOM
smulholland@burtblee.com